**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**RICHARD G. ROPER,**

**Plaintiff,**

**vs.**                                                   **Civ. No. 15-1045  KK**

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner of Social Security,**

**Defendant.**

**<u>MEMORANDUM OPINION AND ORDER</u>**[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 20) filed April 13, 2016, in support of Plaintiff Richard G. Roper's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claims for Title II disability benefits and Title XVI supplemental security income benefits.  On June 23, 2016, Plaintiff filed his Motion to Reverse and Remand for Payment of Benefits, or In the Alternative, For Rehearing, With Supporting Memorandum ("Motion").  (Doc. 25.)  The Commissioner filed a Response in opposition on September 26, 2016 (Doc. 29), and Plaintiff filed a Reply on October 6, 2016.  (Doc. 30.)  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1]  Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is substituted for Carolyn Colvin as the Acting Commissioner of the Social Security Administration.

[2]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 4, 12, 13.)

# I.  Background and Procedural Record

Claimant Richard G. Roper ("Mr. Roper") alleges that he became disabled on February 23, 2009, at the age of twenty-nine, because of blindness in left eye, depressive disorder, social problems, hearing loss in right ear, anxiety, bipolar disorder, and headaches. (Tr. 62, 112.[3])  Mr. Roper graduated from high school in 1997, served a short time in the U.S. Army, and has worked as a laborer for various companies, a clerk in a grocery store, a dishwasher in restaurants, and a deck hand for water drilling companies.  (Tr. 113, 118, 394.)

On July 1, 2011, Mr. Roper filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, and concurrently filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq.  (Tr. 62-66, 364-70.)  Mr. Roper's applications were initially denied on November 22, 2011.  (Tr. 26, 30-33, 371, 372-75.)  Mr. Roper's applications were denied again at reconsideration on October 23, 2013.[4]  (Tr. 27, 35-37, 377, 378-80.)  On October 13, 2013, Mr. Roper requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 38, 382.)  The ALJ conducted a hearing on September 2, 2014.  (Tr. 388-428.)  Mr. Roper appeared in person at the hearing with attorney representative James Rawley.[5]  (*Id.*)  The ALJ took testimony from Mr. Roper (Tr. 393-418), and an impartial vocational expert ("VE"), Nicole King (Tr. 418-28).

On January 1, 2015, the ALJ issued an unfavorable decision.  (Tr. 11-25.)   In arriving at her decision, the ALJ determined that Mr. Roper met the insured status requirement through

---

[3] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 20) that was lodged with the Court on April 13, 2016.

[4] On May 15, 2013, the Administration documented there had been a delay in processing Mr. Roper's claims.  (Tr. 34.)

[5] Mr. Roper is represented in this proceeding by Francesca J. MacDowell.  (Doc. 1.)

September 30, 2010,[6] and that he had not engaged in substantial gainful activity since his alleged disability onset date.  (Tr. 16.)  The ALJ found that Mr. Roper suffered from severe impairments of polysubstance abuse, blind left eye, obesity, and schizophrenia.  (*Id.*)  The ALJ found that these impairments, individually or in combination, did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 17.)

Because she found that Mr. Roper's impairments did not meet a Listing, the ALJ then went on to assess Mr. Roper's residual functional capacity ("RFC").  The ALJ stated that

> [a]fter careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but the claimant has no depth perception or peripheral vision on the left.  From a mental standpoint, he requires work that involves only simple decisions with few workplace changes, involving no interaction with the public, and only occasional superficial contact with co-workers.

(Tr. 42.)  Based on the testimony of the VE, the ALJ concluded that Mr. Roper was unable to perform any past relevant work, and that considering Mr. Roper's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Mr. Roper could perform and he was therefore not disabled.  (Tr. 23-25.)

On September 11, 2015, the Appeals Council issued its decision denying Mr. Roper's request for review and upholding the ALJ's final decision.  (Tr. 5-7.)  On November 16, 2015, Mr. Roper timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1.)

---

[6] To receive disability benefits, Mr. Roper must show he was disabled prior to his date of last insured.  *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1347 (10th Cir. 1990).

## II. <u>Standard of Review</u>

Judicial review of the Commissioner's denial of disability benefits is limited to whether the final decision[7] is supported by substantial evidence and whether the Commissioner applied the correct legal standards to evaluate the evidence.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  In other words, the Court does not reexamine the issues *de novo*.  *Sisco v. U.S. Dep't. of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992).  The Court's examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence."  *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195, 1200 (10th Cir.

---

[7] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision.  20 C.F.R. §§ 404.981, 416.1481.  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

2004)).  Thus, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court would have "made a different choice had the matter been before it *de novo*."  *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).  As such, even if a reviewing court agrees with the Commissioner's ultimate decision to deny benefits, it cannot affirm that decision if the reasons for finding a claimant not disabled were arrived at using incorrect legal standards, or are not articulated with sufficient particularity. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). "[T]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."  *Id.* at 1009-10.  Rather, the ALJ need only discuss the evidence supporting his decision, along with any "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Id.*; *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014).

### III.  Applicable Law and Sequential Evaluation Process

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Act if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy."  42 U.S.C. § 423(d)(2)(A).  To qualify for disability insurance benefits, a claimant must establish a severe physical or mental

impairment expected to result in death or to last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

When considering a disability application, the Commissioner uses a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show that: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) meet or equal one of the Listings[8] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan* 399 F.3d at 1261. If the claimant can show that his impairment meets or equals a Listing at step three, the claimant is presumed disabled and the analysis stops. If at step three, the claimant's impairment is not equivalent to a listed impairment, before moving on to step four of the analysis, the ALJ must consider all of the relevant medical and other evidence, including all of the claimant's medically determinable impairments whether "severe" or not, and determine what is the "most [the claimant] can still do" in a work setting despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1)-(3), 416.945(a)(1)-(3). This is called the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1545(a)(1) & (a)(3), 416.945(a)(1) & (a)(3). The claimant's RFC is used at step four to determine if he can perform the physical and mental demands of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). If the claimant establishes that he is incapable of meeting those demands, the burden of proof then shifts to the Commissioner, at step

---

[8] 20 C.F.R. pt. 404, subpt. P. app. 1.

five of the sequential evaluation process, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Id.*, *Grogan*, 399 F.3d at 1261.

Although the claimant bears the burden of proving disability in a Social Security case, because such proceedings are nonadversarial, "[t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993); *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). "This is true despite the presence of counsel." *Henrie*, 13 F.3d at 361. "The duty is one of inquiry and factual development," *id.*, "to fully and fairly develop the record as to material issues." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). This may include, for example, an obligation to obtain pertinent medical records or to order a consultative examination. *Madrid*, 447 F.3d at 791-92. The duty is triggered by "some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins*, 113 F.3d at 1167.

## ANALYSIS

Mr. Roper asserts two arguments in support of reversing and remanding his case as follows: (1) the ALJ's finding that Mr. Roper failed to establish the presence of a medically determinable impairment prior to the expiration of his insured status was not supported by substantial evidence; and (2) the ALJ's RFC finding is contrary to the evidence and law. (Doc. 25 at 5-21.) The Court finds grounds for remand as discussed below.

A.    **RFC Assessment**

Mr. Roper argues that the ALJ's RFC omitted several limitations for which there was substantial evidence in the record.  (Doc. 25 at 7.)  In assessing his limitations related to his ability to do work-related mental activities, Mr. Roper argues that the ALJ failed to properly evaluate his treating doctor's opinion, improperly discounted the State agency examining consulting psychologist's assessments, and improperly considered Mr. Roper's demeanor at the hearing.  (*Id.* at 8-18.)  As to Mr. Roper's physical impairments, he argues that the ALJ failed to discuss the limitations assessed by State agency examining medical consultant Gregory McCarthy.  (*Id.* at 18-20.)

Assessing a claimant's residual functional capacity is an administrative determination left solely to the Commissioner.  20 C.F.R. §§ 404.1546(c) and 416.946(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity.");  *see also* SSR 96-5p, 1996 WL 374183, at *2 (stating that some issues are administrative findings, such as an individual's RFC).  In assessing a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record.  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2) and (3) and 416.945(a)(2) and (3).  The ALJ must consider and address medical source opinions and must always give good reasons for the weight accorded to a treating physician's opinion.  20 C.F.R. § 404.1527(c)(2); SSR 96-8p, 1996 WL 374184, at *7.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  Most importantly, the ALJ's "RFC assessment must include a narrative discussion

describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that her RFC conclusions are not supported by substantial evidence. *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review. *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished).

### 1.   Treating Physician Karla Vitale, D.O.

#### a.   Treatment Records

On November 11, 2010, Mr. Roper presented to Cibola Family Health Center seeking to establish care for concerns about his "mental health." (Tr. 144-45.) DO Karla Vitale evaluated Mr. Roper. (*Id.*) Mr. Roper reported that he was not currently taking any medications, but that in the past he had taken Risperdal for bipolar disorder, Valium for anxiety, and Trazodone for insomnia. (Tr. 144.) Dr. Vitale noted that Mr. Roper reported being depressed, receiving counseling, having unexplained bursts of energy, talking too fast, seeing things other people do not see, hearing things other people do not hear, and having racing thoughts and sleep disturbances. (*Id.*) Dr. Vitale noted that Mr. Roper reported having passive suicidal ideations and had attempted a methamphetamine overdose in 2003. (*Id.*) Dr. Vitale noted that Mr. Roper reported that methamphetamines were a problem for him and that he currently smoked cannabis every day. (*Id.*) Dr. Vitale psychologically examined Mr. Roper and assessed him with, *inter alia*, bipolar disorder, depression with anxiety, and insomnia. (Tr. 145.) Dr. Vitale prescribed

Wellbutrin and Hydroxyzine for bipolar disorder, Trazodone for insomnia, and ordered lab work. (*Id.*)

Mr. Roper saw Dr. Vitale four more times over the next six months. (Tr. 132-34, 135-37, 138-40, 141-43.)  On December 7, 2010, Dr. Vitale indicated that Mr. Roper's bipolar disorder was worsening. (Tr. 141.)  She increased the Wellbutrin, stopped Hydroxyzine, and prescribed Lamictal. (Tr. 142.)  On December 30, 2010, Dr. Vitale noted that Mr. Roper reported using methamphetamines on Christmas. (Tr. 138.)  She also noted that Mr. Roper reported he was paranoid and believed that people were out to get him. (*Id.*)  Dr. Vitale assessed that Mr. Roper's bipolar disorder was unchanged. (*Id.*)  Dr. Vitale added "[a]mphetamine and other psychostimulant dependence, episodic abuse" and "[c]annabis dependence" to her assessment, increased the Lamictal, continued Wellbutrin for depression, and encouraged Mr. Roper to discontinue his use of illicit drugs explaining that their use with prescription drugs was contraindicated and could be fatal. (Tr. 139.)  On February 11, 2011, Dr. Vitale noted that Mr. Roper reported he continued to use illicit drugs and had last used methamphetamines three weeks earlier. (Tr. 135-36.)  She assessed that Mr. Roper's bipolar disorder was unchanged. (*Id.*)  She increased the Lamictal, continued Wellbutrin, and added Effexor for depression. (Tr. 136.)  On May 5, 2011, Dr. Vitale assessed that Mr. Roper's bipolar disorder was unchanged. (Tr. 132-34.) As to Mr. Roper's bipolar disorder, Dr. Vitale noted that he was "noncompliant and difficult to treat." (Tr. 133.)  She continued Lamictal, Wellbutrin and Hydroxyzine, and increased Effexor. (*Id.*)

### b.     **Treating Physician Analysis**

An ALJ is required to conduct a two-part inquiry with regard to treating physicians, each step of which is analytically distinct. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

First, the ALJ must decide whether a treating doctor's opinion commands controlling weight. *Krauser*, 638 F.3d at 1330.  A treating doctor's opinion must be accorded controlling weight "if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."  *Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (applying SSR 96-2p, 1996 WL 374188, at *2[9]).  If a treating doctor's opinion does not meet this standard, the opinion is still entitled to deference to some extent as determined under the second step of the process.  *Krauser*, 638 F.3d at 1330.  In this second step, the ALJ must determine the weight to accord the treating physician by analyzing the treating doctor's opinion against the several factors provided in 20 C.F.R. § 416.927(c).[10]  *Id.*  The ALJ is not required to "apply expressly" every relevant factor.  *Oldham*, 509 F.3d at 1258.  "Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion," that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight."  *Langley*, 373 F.3d at 1119 (quoting *Watkins*, 350 F.3d at 1300).  Finally, if the ALJ rejects the opinion completely, he *must* then give "'specific, legitimate reasons'" for doing so.  *Watkins*, 350 F.3d at 1301 (citing *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)).  "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion

---

[9] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes.  *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

[10] These factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist.  *See* 20 C.F.R. § 416.927(c)(2)-(6).

outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*"  *Langley*, 373 F.3d at 1121 (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis in original)).

Here, the ALJ stated as to Dr. Vitale's opinion that

> while Karla Vitale, D.O., assessed bipolar disorder, unspecified; depression with anxiety; and insomnia unspecified, other than his allegations of auditory and visual hallucinations, mental status examinations have been essentially unremarkable.  She did not consider his admitted meth and marijuana abuse, however (Exhibit 1F/6-7, 15-16).  Therefore, I am not affording the findings of Dr. Vitale significant weight.

(Tr. 21.)  Mr. Roper argues that the ALJ failed to complete the two-step inquiry for evaluating the medical opinions of a treating physician pursuant to *Krauser*.  (Doc. 25 at 10.)  Specifically, Mr. Roper asserts that the ALJ failed to consider whether Dr. Vitale's opinion was supported by other evidence in the record, and failed to discuss the required regulatory factors when discussing the weight she accorded to her findings.  (*Id.*)  Relying on *Duncan v. Colvin*, 608 F. App'x 566, 574 (10th Cir. 2015) (unpublished), the Commissioner contends that Mr. Roper's argument is misplaced because Dr. Vitale did not offer an opinion regarding Mr. Roper's mental functional limitations.  (Doc. 29 at 11.)  On that basis, the Commissioner asserts that there was no functional limitation that Dr. Vitale opined that should have been included in the RFC.  (*Id.*)

### (1)     The ALJ Failed To Properly Weigh Dr. Vitale's Opinion

The facts here are distinguishable from those in *Duncan*.  In *Duncan*, the claimant argued the ALJ was *silent* regarding the weight accorded to her treating physician and failed to follow the two-part treating physician inquiry.  608 F. App'x at 574.  The Court found that "[g]iven that the ALJ did not reject the medical impairments found by [the treating physician] and there were no medical opinions regarding [claimant's] work-related functional limitations, there was no

opinion on such matter by [the treating physician] for the ALJ to weigh." *Id.* Here, at step two, the ALJ *did reject* certain of the medical impairments Dr. Vitale assessed.[11] Further, the ALJ *weighed* Dr. Vitale's opinion and accorded it "not significant weight." (Tr. 21.) Thus, in according weight to a treating physician opinion, the ALJ was required to determine if it was well-supported and not inconsistent with other substantial evidence in the record.[12] *Krauser*, 638 F.3d at 1330. If not, the ALJ was required to weigh the medical opinion using certain regulatory factors. *Langley*, 373 F.3d at 1119. If the ALJ rejected the opinion altogether, she was required to provide specific, legitimate reasons for doing so. *Watkins*, 350 F.3d at 1301. Skipping step one and then failing to apply any of the regulatory factors at step two, the ALJ ultimately rejected Dr. Vitale's opinion and provided reasons that were not legitimate. The ALJ stated, without more, that other than Mr. Roper's allegations of auditory and visual hallucinations, his mental status exams were essentially unremarkable, and that Dr. Vitale failed to consider Mr. Roper's drug abuse. (Tr. 21.) First, it is pure speculation that the presence of auditory and visual hallucinations render a mental status exam essentially unremarkable. *Langley*, 373 F.3d at 1121. Second, Dr. Vitale's medical records demonstrate she assessed Mr. Roper's methamphetamine and cannabis abuse separate and apart from Mr. Roper's bipolar disorder, depression with anxiety, and insomnia. Moreover, considering Mr. Roper's drug addiction at this stage of review was not a proper basis to reject Dr. Vitale's opinion.

---

[11] The ALJ did not identify bipolar disorder, depression with anxiety, or insomnia as either severe or non-severe impairments.

[12] Dr. Vitale's diagnoses of bipolar disorder and depression were *consistent* with other medical record evidence. On September 21, 2009, Psychiatrist Javier Vera, M.D., diagnosed Mr. Roper with bipolar disorder. (Tr. 305-09.) On October 15, 2011, State agency examining psychologist consultant David LaCourt, Ph.D., diagnosed Mr. Roper with "bipolar I disorder, recurrent, last depressive episode, severe." (Tr. 155.)

### (2) The ALJ Improperly Rejected Dr. Vitale's Opinion Based On Insufficient Findings Regarding Mr. Roper's Drug Abuse

The ALJ's reasoning here and elsewhere,[13] raises the concern that the ALJ considered Mr. Roper's drug abuse to be a contributing factor material to his disability before the question of materiality should have been raised.  There are special statutes and regulations governing drug and alcohol cases.  The Contract with American Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 848, 852 (enacted March 29, 1996) added an extra step to the five-step sequential evaluation for claimants with drug and/or alcohol addiction.  *Salazar v. Barnhart*, 180 F. App'x 39, 46-47 (10th Cir. 2006) (unpublished.)  The Act amended the Social Security Act to provide that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  *Id.* (citing 42 U.S.C. § 423(d)(2)(C); *see also McGoffin v. Barnhart*, 288 F.3d 1248, 1251 (10th Cir. 2002)).

The Commissioner implemented regulations that set forth the analysis to be followed by an ALJ in a case involving drug addiction: "If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. §§ 404.1535(a), 416.935(a).  Shortly after the law was amended, the Commissioner sent out a teletype on applying the new law, which speaks to situations where a claimant has one or more other mental impairments in addition to drug addiction and alcoholism.  *Salazar*, 180 F. App'x at 46.  The teletype stressed the need for careful examination of periods of abstinence and also directs that if the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, the drug addiction and alcoholism is not a contribution factor material to the

---

[13] *See* Section IV.A.2., *infra*.

disability determination. *Id.* "Further, if the record is devoid of any medical or psychological report, opinion, or projection as to the claimant's remaining limitations if she stopped using drugs or alcohol, an ALJ should 'find that [drug addiction and alcoholism] is not a contributing factor material to the determination of disability.'" *Salazar*, 180 F. App'x at 48 (internal citation omitted).

Here, the ALJ was required to assess first whether Mr. Roper was disabled before she considered whether his drug abuse was a contributing material factor. *Id.*; *see Drapeau v. Massanari*, 10 F. App'x 657, 662 (10th Cir. 2001) (unpublished) ("[T]he ALJ failed to determine whether plaintiff was disabled prior to finding that alcoholism was a contributing factor material thereto. The implementing regulations make clear that a finding of disability is a condition precedent to an application of § 423(d)(2)(C)."). The ALJ did not do this analysis here. Instead, she rejected Dr. Vitale's opinion regarding Mr. Roper's mental impairments because she determined Dr. Vitale's records were putatively devoid of any consideration of Mr. Roper's drug abuse. This is error and an improper basis for rejecting Dr. Vitale's opinion regarding his mental impairments.

### (3)     The ALJ's Error Was Not Harmless

The Court also finds that the error was not harmless. Here, Dr. Vitale's opinion regarding Mr. Roper's mental impairments was consistent with other medical record evidence. On September 21, 2009, Psychiatrist Javier Vera, M.D., diagnosed Mr. Roper with bipolar disorder. (Tr. 305-09.) On October 15, 2011, State agency examining psychologist consultant David LaCourt, Ph.D., diagnosed Mr. Roper with "bipolar I disorder, recurrent, last depressive episode, severe." (Tr. 155.) Had the ALJ properly evaluated Dr. Vitale's opinion regarding Mr. Roper's mental impairments, it could have impacted the ALJ's consideration of

Dr. LaCourt's assessed limitations based on the same diagnosis. It could also have impacted the ALJ's determination that no mental impairment existed prior to Mr. Roper's date last insured since Dr. Vitale's diagnosis of bipolar disorder and depression was consistent with Dr. Vera's diagnosis in 2009. The Court applies harmless error where the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005).

For these reasons, the ALJ failed to apply the proper legal standard for weighing a treating physician's opinion and her reasons for rejecting Dr. Vitale's opinion were not legitimate.

### 2. Psychological Consultative Examiner David LaCourt, Ph.D.

#### a. Consultative Records

On November 15, 2011, Mr. Roper presented to State agency examining psychological consultant David LaCourt, Ph.D., as part of the Administration's initial review of his disability claims. (Tr. 154-56.) Dr. LaCourt noted Mr. Roper's subjective complaints as well as his observations of Mr. Roper. (*Id.*) Dr. LaCourt's diagnostic impression was "[b]ipolar I disorder, recurrent, last depressive episode, severe, without psychotic symptoms." (Tr. 155.) Dr. LaCourt assessed that Mr. Roper had *no limitations* in his ability to understand and remember very short/simple instructions. (Tr. 155.) He assessed that Mr. Roper had *mild* limitations in his ability (1) to maintain attention and concentration for extended periods of time, (2) to adapt to changes in the workplace, (3) to be aware of normal hazards and take appropriate precautions in the work setting, and (4) to be able to travel in unfamiliar places or use public transportation. (Tr. 155-56.) He assessed that Mr. Roper had *moderate* limitations in his ability (1) to

understand and remember detailed/complex instructions; and (2) to work with the public.  (*Id.*)  He assessed that Mr. Roper had *marked* limitations in his ability (1) to carry out instructions; (2) to work without supervision; (3) to get along with coworkers; and (4) to respond appropriately to a supervisor.  (*Id.*)  Dr. LaCourt noted that there was no known alcohol or illicit substance involvement for about a calendar year.  (*Id.*)

On September 25, 2013, Dr. LaCourt evaluated Mr. Roper a second time as part of the Administration's reconsideration of Mr. Roper's claims.  (Tr. 337-39.)  Dr. LaCourt noted Mr. Roper's subjective complaints as well as his observations of Mr. Roper.  (*Id.*)  Dr. LaCourt's diagnostic impression was "schizophrenia continuous, severity 3 on 0-4 scale."  (Tr. 338.)  Dr. LaCourt assessed that Mr. Roper had *no limitations* in his ability to understand and remember very short/simple instructions.  (*Id.*)  He assessed Mr. Roper had *no-to-mild* limitations in his ability to understand and remember detailed/complex instructions.  (*Id.*)  He assessed that Mr. Roper had *mild* limitations in his ability to adapt to changes in the work setting.  (Tr. 339.)  He assessed that Mr. Roper had *mild-to-moderate* limitations in his ability to maintain attention and concentration for extended periods of time.  (Tr. 338.)  He assessed that Mr. Roper had *moderate* limitations in his ability (1) to interact appropriately with the public; (2) to get along with coworkers; and (3) to be aware of normal hazards and take appropriate precautions in the workplace.  (Tr. 338-39.)  He assessed that Mr. Roper had *moderate-to-marked* limitations in his ability to (1) carry out instructions; and (2) respond appropriately to a supervisor.  (*Id.*)  He assessed that Mr. Roper had *marked* limitations in his ability (1) to work without supervision; and (2) to travel to unfamiliar places or use public transportation.  (*Id.*)  Dr. LaCourt noted that there was no known illicit substance abuse with likely adverse workplace effects.  (Tr. 339.)

b.    **Medical Source Evidence**

The record must demonstrate that the ALJ considered all of the evidence.  *Clifton*, 79 at

1009; *see also* 20 C.F.R. §§ 404.1527(b) and 416.927(b) (we will always consider the medical

opinions in your case record together with the rest of the relevant evidence we receive).  "An

ALJ must evaluate every medical opinion in the record, although the weight given each opinion

will vary according to the relationship between the disability claimant and the medical

professional." *Hamlin*, 365 F.3d at 1215.   "An ALJ must also consider a series of specific

factors in determining what weight to give any medical opinion." *Id.* (citing *Goatcher v. United

States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)).[14]   Generally the

opinion of a treating physician is given more weight than that of an examining consultant, and

the opinion of a non-examining consultant is given the least weight of all.  *Robinson*, 366 F.3d at

1084.  "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must

explain the weight he is giving to it." *Hamlin*, 365 F.3d at 1215.

Here, the ALJ stated as to Dr. LaCourt's opinion that

> I have afforded little weight to the opinions of Dr. LaCourt, as he seems to have
> relied heavily on the claimant's subjective reports, which even he indicated were
> not entirely accurate.  Further, Dr. LaCourt did not adequately explore his current
> use of substance abuse and the effects his substance abuse has on his mental
> functioning.

(Tr. 22.)  Mr. Roper argues that the ALJ provided invalid reasons for according little weight to

Dr. LaCourt's opinions.  (Doc. 25 at 13-18.)  Specifically, Mr. Roper argues that it was improper

for the ALJ to reject Dr. LaCourt's opinion because he relied heavily on the claimant's

subjective reports.  (*Id.* at 13.)  Mr. Roper further argues that to the extent the ALJ questioned

Dr. LaCourt's findings based on her judgment that he had failed to adequately explore

---

[14] These factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist.  *See* 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6).

Mr. Roper's current substance abuse, the ALJ was required to seek clarification. (*Id*. at 14.) The Commissioner argues that the ALJ properly discounted Dr. LaCourt's opinion based on her findings that Mr. Roper's statements regarding the intensity, persistence and limiting effects of his symptoms were not entirely credible. (Doc. 29 at 12.) The Commissioner further argues that because Mr. Roper was not truthful with Dr. LaCourt regarding his drug use, the ALJ reasonably noted that Dr. LaCourt was not able to explore the effects of Mr. Roper's substance abuse on his mental functioning. (*Id*. at 13.)

### (1)   The ALJ Improperly Rejected Dr. LaCourt's Assessments Based on Mr. Roper's Subjective Complaints

"The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005). Here, Dr. LaCourt noted Mr. Roper's subjective statements. Although the ALJ took issue with the credibility of Mr. Roper's statements to Dr. LaCourt,[15] his subjective complaints were consistent with other record evidence. For example, Mr. Roper reported problems with sleep, that his mind raced, that he ruminated, heard voices, and became angry. (Tr. 155, 338.) He reported that self-harm ideation had persisted for years, but that he had had no recent reported suicide attempts. (Tr. 155.) Mr. Roper similarly reported to healthcare providers at Valencia Counseling Services[16] that he experienced, *inter alia*, sleep difficulty, racing thoughts, diminished ability to think and concentrate, and aggression. (Tr. 191, 236, 269, 305, 328.) Mr. Roper also reported to Dr. Vitale that he had sleep disturbances, racing thoughts, sudden

---

[15] The ALJ stated that Mr. Roper had attempted to downplay his substance abuse with Dr. LaCourt, and reported that he spent most of his day withdrawn in his room, was easily angered, heard voices, and was unable to go out in public. (Tr. 22.)

[16] Mr. Roper began treatment at Valencia Counseling Services on February 19, 2009, for substance abuse, depression and anxiety. (Tr. 188-332.) On September 21, 2009, Psychiatrist Javier Vera diagnosed Mr. Roper with bipolar NOS, marijuana and meth dependence. (Tr. 305-09.)

shifts in energy, thought people were out to get him, and that he often worried and felt nervous. (Tr. 132, 135, 138, 141, 144.)  Dr. Vitale indicated Mr. Roper was symptomatic for auditory and visual hallucinations.  (*Id.*)  Mr. Roper also reported to Dr. Vitale that he had passive suicidal ideations, and that his previous suicide attempt was in 2003.  (*Id*.)  Thus, Mr. Roper's subjective complaints, in large part, were consistent with other medical evidence record.   Although credibility judgments are peculiarly the province of the finder of fact, such judgments by themselves "do not carry the day and override the medical opinion of a treating physician that is supported by the record."  *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)).

Psychological opinions may rest either on observed signs and symptoms *or* on psychological tests.  *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).   Here, Dr. LaCourt noted not just Mr. Roper's subjective complaints, but his observations as well.  On October 15, 2011, he observed that Mr. Roper's eye contact was in the low normal range, that he was nervous, and that he was depressed.  (Tr. 155.)  His impression was that Mr. Roper had low average intellectual functioning.  (*Id.*)  On September 25, 2013, Dr. LaCourt observed that Mr. Roper was notably nervous, continuously rubbed his hands up and down his thigh, and engaged in occasional repositioning/partial rocking in his chair.  (Tr. 338.)  He observed that Mr. Roper's speech was increasingly pressured and became louder as the visit progressed.  (*Id.*)  He observed that Mr. Roper's affect was labile, that he was pessimistic and mildly suspicious, and had a guarded mood.  (*Id.*)   He observed that Mr. Roper's thought content included substantial persisting paranoid delusions.  (*Id.*)  Dr. LaCourt's impression was that Mr. Roper had a "somewhat decremented intellectual functioning as a function of active psychotic process." (*Id.*)  Thus, contrary to the ALJ's explanation, Dr. LaCourt's notes included a significant number

of observed signs and symptoms on which to rest his psychological opinions and functional assessments. *Robinson*, 366 F.3d at 1083.

**(2)** **The ALJ Improperly Rejected Dr. LaCourt's Assessments Based On Insufficient Findings Regarding Mr. Roper's Drug Abuse**

The ALJ's explanation that Dr. LaCourt failed to adequately explore Mr. Roper's substance abuse is an improper basis for rejecting his opinions. Whether Mr. Roper's substance abuse was material to a finding of disability is made *after* a claimant is found to be disabled.[17] 20 C.F.R. §§ 404.1535(a), 416.935(a). Thus, any lack of findings in Dr. LaCourt's records related to Mr. Roper's drug addiction was not relevant to an initial finding of disability.

**(3)** **The ALJ Failed to Properly Weigh Dr. LaCourt's Opinions**

In considering Dr. LaCourt's opinion, the ALJ was required to provide good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight she assigned. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). The ALJ failed to demonstrate that she considered any of the regulatory factors in weighing Dr. LaCourt's opinions, such as the fact of examination, supportability, consistency, and Dr. LaCourt's area of specialization. *See* 20 C.F.R. §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5); *see also Robinson*, 366 F.3d at 1084, (the opinion of an examining source is generally entitled to more weight than a nonexamining agency physician who has never seen the claimant). This is error.

For these reasons, the ALJ failed to apply the correct legal standard to evaluate Dr. LaCourt's opinions.

---

[17] *See* Section IV.A.1., *supra*.

**3.      The ALJ's RFC Failed to Account for All of Mr. Roper's Limitations Related to His Ability to Do Work-Related Mental Activities**

Mr. Roper argues that had the ALJ properly evaluated Dr. LaCourt's opinions that his assessments demonstrated he was unable to meet the mental demands of even unskilled work. (Doc. 25 at 14-17.)  The Commissioner argues that the ALJ included the limitations that were supported as a whole.  (Doc. 29 at 11.)   However, even assuming *arguendo* the ALJ properly relied on the State agency nonexamining psychological consultant opinions and properly excluded Dr. LaCourt's assessments, the ALJ's RFC is not supported by substantial evidence. The ALJ's RFC stated in pertinent part that "[f]rom a mental standpoint, [Mr. Roper] requires work that involves only simple decisions with few workplace changes, involving no interaction with the public and only occasional superficial contact with co-workers."  (Tr. 19.)  She stated elsewhere that she "established a mental residual functional capacity more limiting than what the Stage agency's medical consultants determined, limiting him to no interaction with the public, but otherwise finding essentially identical limitations."  (Tr. 22.)

State agency nonexamining psychological consultants Harry R. Henderson, Ph.D., and Scott R. Walker, M.D., each prepared a Mental Residual Functional Capacity Assessment regarding Mr. Roper's ability to do work-related mental activities.  (Tr. 174-77, 341-43.)  Their Section I assessments were nearly identical.[18]   (*Id.*)  They assessed that Mr. Roper had *no significant limitations* in his ability (1) to remember locations and work-like procedures; (2) to understand and remember very short and simple instructions; (3) to carry out very short and

---

[18] Dr. Henderson did not assess any limitations in his Section III narrative of the MRFCA based on the Section I findings.  (Tr. 176.)  Dr. Walker assessed limitations in his Section III narrative of the MRFCA based on the Section I findings.  (Tr. 343.)  *See Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished) (holding that if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding).

simple instructions; (4) to make simple work-related decisions, (5) to interact appropriately with the general public;[19] (6) to ask simple questions or request assistance; (7) to be aware of normal hazards and take appropriate precautions; and (8) to travel in unfamiliar places or use public transportation.[20]   (*Id.*)   They assessed that Mr. Roper had *moderate* limitations in his ability (1) to understand and remember detailed instructions; (2) to carry out detailed instructions; (3) to maintain attention and concentration for extended periods; (4) to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) to sustain an ordinary routine without special supervision; (6) to work in coordination with or in proximity to others without being distracted by them; (7) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (8) to accept instructions and respond appropriately to criticism from supervisors; (9) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (10) to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (11) to respond appropriately to changes in the work setting; (12) to travel in unfamiliar places or use public transportation;[21] and (13) to set realistic goals or make plans independently of others. (*Id.*)   Finally, Dr. Walker assessed that Mr. Roper had *marked* limitations in his ability to interact appropriately with the general public.  (*Id.*)

---

[19] Dr. Walker assessed this as a *marked* limitation.  (Tr. 342.)

[20] Dr. Walker assessed this as a *moderate* limitation.  (Tr. 342.)

[21] Dr. Henderson assessed this as not significantly limited.  (Tr. 175.)

There are fourteen mental abilities critical for performing *unskilled* work.   POMS DI 25020.010.B.3.  Mental Limitations.[22]   They include the ability (1) to remember work-like procedures; (2) to understand and remember very short and simple instructions; (3) to carry out very short and simple instructions; (4) to maintain attention for extended periods of 2-hour segments (concentration is not critical); (5) to maintain regular attendance and be punctual within customary tolerance (these tolerances are usually strict); (6) to sustain an ordinary routine *without* special supervision; (7) to work in coordination with or in proximity to others without being (unduly) distracted by them; (8) to make simple work-related decisions; (9) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (these requirements are usually strict); (10) to ask simple questions or request assistance; (11) to accept instructions and respond appropriately to criticism from supervisors; (12) to get along with coworkers or peers without (unduly) distracting them or exhibiting behavioral extremes; (13) to respond appropriately to change in a routine work setting; and (14) to be aware of normal hazards and take appropriate precautions.  *Id.*  Of these fourteen critical mental abilities to do unskilled work, the ALJ's RFC addresses only four,[23] or at most six (assuming making simple work-related decisions adequately addresses Mr. Roper's ability to understand, remember and carry out very short and simple instructions).  However, the State agency opinions on which the ALJ relied assessed *moderate* limitations in *eight* of the critical mental abilities required for

---

[22] The POMS is "a set of policies issued by the Administration to be used in processing claims."  *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999).

[23] The ability (1) to work in coordination with or in proximity to others without being (unduly) distracted by them; (2) to make simple work-related decisions; (3)  to get along with coworkers or peers without (unduly) distracting them or exhibiting behavioral extremes; and (4) to respond appropriately to change in a routine work setting.

unskilled work, *five* of which the ALJ's RFC failed to address in their entirety.[24]  "[A] moderate impairment is not the same as no impairment at all."  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007);  POMS  DI 24510.063.B.2. ("moderately limited" is checked when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired). Moreover, limiting Mr. Roper to work involving simple decisions does not cure the ALJ's failure to address all of the mental limitations assessed.  *See Vigil v. Colvin*, 805 F.3d 1199, 1204 (there may be cases in which an ALJ's limitation to "unskilled" work does not adequately address a claimant's mental limitations (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290, n. 3 (10th Cir. 2012) (recognizing that restrictions to unskilled jobs do not in all instances account for the effects of mental impairments)).  Thus, setting aside that Dr. LaCourt assessed greater limitations in certain mental abilities, the ALJ's RFC failed to address all the limitations assessed by the State agency consultants upon which she relied.  *See Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished) (an ALJ may not turn a blind eye to moderate Section I limitations).  Moreover, her RFC assessment was *not* more limiting than the State agency medical opinions as she stated, and the ALJ failed to explain why she chose some but not all of the limitations the State agency consultants assessed.  "An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  *Haga*, 482 F3d at 1208.  This is error.

For all of the foregoing reasons, the ALJ's RFC as to Mr. Roper's mental limitations is not supported by substantial evidence.

---

[24] The ALJ did not address Mr. Roper's ability (1) to maintain attention for extended periods of 2-hour segments (concentration is not critical); (2) to maintain regular attendance and be punctual within customary tolerance (these tolerances are usually strict); (3) to sustain an ordinary routine *without* special supervision; (4)  to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (these requirements are usually strict); and (5) to accept instructions and respond appropriately to criticism from supervisors.

### B.      Substantial Justification

The Commissioner bears the burden of proving that its position was substantially justified.  *Kemp v. Bowen*, 822 F.3d 966, 967 (10th Cir. 1987).    The test for substantial justification is one of reasonableness in law and fact.  *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995).  The government's position must be "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person."  *Pierce v. Underwood*, 487 US. 552, 565, 108 S. Ct. 2541, 101 L.Ed.2d 490 (1988).  The government's "position can be justified even though it is not correct."  *Hackett*, 475 F.3d at 1172 (quoting *Pierce*, 487 U.S. at 565.)  A lack of substantial evidence on the merits does not necessarily mean that the government's position was not substantially justified.  *Hadden v. Bowen*, 851 F.2d 1266, 1269 (10th Cir. 1988).

As fully discussed herein, the ALJ failed to apply the correct legal standards in evaluating the opinions of Dr. Vitale and Dr. LaCourt, and improperly adopted certain findings of the State agency nonexamining psychological consultants' assessed limitations while rejecting others without explanation.   As such, the ALJ's RFC was not supported by substantial evidence. Therefore, the government's position was not substantially justified.

### C.      Remaining Issues

The Court will not address Mr. Roper's remaining claims of error because it may be affected by the ALJ's treatment of this case on remand.  *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. Conclusion

For the reasons stated above, Mr. Roper's Motion to Reverse or Remand for Rehearing is

**GRANTED.**

_____
**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**